CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JAN 2 6 2011
JULIA C. DUDLEY, CLERK
BY: /s/ Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

THOMAS DALE, )
)
Plaintiff, )
) Civil Action No. 6:09cv063
v. )
)
MICHAEL J. ASTRUE, ) By: Michael F. Urbanski
Commissioner of Social Security, ) United States Magistrate Judge
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Thomas Dale ("Dale") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). On appeal, Dale contends that the Administrative Law Judge ("ALJ") erred by concluding that he could return to his past relevant work as a cashier. Dale argues that the case should be remanded to the Commissioner for consideration of certain testing performed after the ALJ's decision but incorporated into the record by the Appeals Council. According to Dale, this testing establishes that he is illiterate, which precludes him from performing the cashier job. At the administrative hearing, the ALJ noted that the "issue here is whether he's literate or illiterate." (Administrative Record, hereinafter "R." at 67.) Because this new evidence bears on the very issue seized upon by the ALJ during the evidentiary hearing, there is a reasonable possibility that the additional evidence presented by Dale would have changed the outcome of the administrative proceeding. See Wilkins v. Secretary, Department of Health & Human Services, 953 F.2d 93, 96 (4th Cir. 1991) (en banc) As such, it is **RECOMMENDED** that this case be **REMANDED** to

the Commissioner for consideration of the Psychological Evaluation performed by Daniel Owens, Ph.D., on December 8, 2008.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Dale was 55 years old on the date of the ALJ's decision, October 23, 2008. Dale's education consisted of remedial classes, and he received a special certificate or diploma after completing the 12th grade in 1973. (R. 43.) Dale testified that he could not read a newspaper and understand it, could not complete job applications and had his driver's license examination read to him. (R. 43.) Dale worked as a welder in the 1980s and spent ten years as a produce and frozen foods stocker at a retail grocery. (R. 147, 154.) For a short period during 1998-99, Dale worked the third shift, 11 p.m. to 7 a.m., at a convenience store. (R. 44, 52, 154-55.) Dale testified that he cashiered and stocked, unloading trucks making overnight deliveries. (R. 44, 155.) A Vocational Expert ("VE") questioned Dale at the administrative hearing concerning his work as a produce clerk, and Dale said his only job was stocking items such as beans and potatoes. Dale explained to the VE that when he was hired by the grocery store, he told the manager that he was dyslexic and could not read, but that given time to learn the words for products such as beans, he would be able to learn the job. (R. 64.) Dale was questioned by the ALJ at the hearing about his brief stint as the convenience store, and he said he only handled cash transactions on the night shift and the cash register told him how much change to provide. (R. 52.) Later, Dale worked part time delivering newspapers and memorized the houses on the rural route that were to receive the newspapers. (R. 61.)

Dale filed an application for DIB and SSI on May 1, 2006, claiming disability as of January 31, 2004. In his application, Dale claimed disability based on his chronic obstructive pulmonary disease ("COPD") and emphysema. Dale's application for benefits was rejected by

the Commissioner initially based on a medical records review by Dr. Rajeschwar Kadian on September 14, 2006. (R. 70, 322-328.) This decision was confirmed on reconsideration based on a medical records review by Dr. William Amos on May 14, 2007. (R. 72, 348-354.) An administrative hearing was held on September 8, 2008 before an ALJ, at which hearing Dale was represented by counsel. (R. 39-69.)

In a decision issued on October 23, 2008, the ALJ found that Dale had severe impairments consisting of COPD and emphysema. (R. 23.) Considering these impairments, the ALJ found that Dale retained the RFC to perform the full range of light work. (R. 27.) Section 5 of the decision addresses Dale's RFC. It mentions that Dale is dyslexic and has to have someone read questions and instructions to him. (R. 28.) Other than in this passing reference, the decision does not address Dale's inability to read, and that inability does not appear to be factored into the vocational calculus. Indeed, in section 6 of the decision, in which the ALJ concludes that Dale is capable of returning to his past relevant work as a cashier, no mention is made of his inability to read. The crux of the ALJ's decision is found in one conclusory sentence, which reads as follows: "In comparing the claimant's residual functional capacity with the physical and mental demands of his work as a cashier, the undersigned finds that the claimant is able to perform it as actually and generally performed." (R. 29.)

The ALJ's decision that Dale could return to work as a cashier simply does not address his inability to read, notwithstanding the fact that the ALJ stated at the administrative hearing that "the issue here is whether he's literate or illiterate," (R. 67), and the fact that the VE testified that literacy ordinarily is required for Dale's past work in both the grocery and convenience stores. (R. 67.) Given the ALJ's statement at the hearing and the VE's testimony, it is difficult to see how a reviewing court could possibly conclude that the ALJ's decision that Dale could

5

return to his past relevant work as a cashier is supported by substantial evidence, particularly given the ALJ's failure to address the literacy issue in his decision.

Further compounding the problem is the fact that the plaintiff provided the Appeals Council with a Psychological Evaluation dated December 8, 2008 performed by Licensed Clinical Psychologist Daniel Owens, Ph.D. (R. 7-12.) Dr. Owens performed a battery of tests on Dale and concluded that his "overall cognitive ability is in the low average range and he is functionally illiterate." (R. 12.) By Order dated September 30, 2009, the Appeals Council acknowledged receipt of Dr. Owens' psychological evaluation report and made it a part of the administrative record. (R. 4.) On the same date, however, in its Notice of Appeals Council Action, the Appeals Council cursorily concluded that "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 2.)

### III

Dale argues on appeal that this case should be remanded to the Commissioner in light of Dr. Owens' finding of illiteracy, arguing that the ALJ's finding that Dale was able to return to his past relevant work as a cashier was not grounded in substantial evidence. Dale argues that once Dr. Owens' evaluation is considered, the regulations direct that a person of his age who is illiterate and limited to light work be determined to be disabled. See 20 C.F.R. § 404, Subpt. P, App. 2, Table 2, Rule 202.09.

The Appeals Council must consider evidence submitted with a request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is considered to be "new" if it is not duplicative or cumulative. Id. at 96. "Evidence is material if there is a

reasonable possibility that the new evidence would have changed the outcome." Id. at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). Where, as here, the Appeals Council considered the additional evidence submitted to it, but denied review, the Fourth Circuit requires the district court to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Id. at 96.

Dr. Owens' Psychological Evaluation meets the Wilkins test. Certainly, it is new as it did not exist as of the date of the ALJ's decision. It is plainly material as it goes to the issue of literacy, on which the ALJ indicated the case turned. Finally, there is no indication that Dale's inability to read only arose following the ALJ's decision, as he testified at the administrative hearing that he took remedial or special education classes in school, could not read the newspaper, and could not read a driver's license test or employment or disability applications.

Further, Dr. Owens' opinion compels the conclusion that a reasonable possibility exists that the evidence submitted to the Appeals Council would have changed the outcome of the ALJ's decision. The ALJ stated at the hearing that the issue in the case turned on Dale's literacy, and Dr. Owens' testing led him to conclude that Dale was functionally illiterate. (R. 12.) Further, the VE testified that literacy ordinarily is required for Dale's past relevant work in a grocery and convenience store. (R. 12.) Based on this testimony by the VE, Dr. Owen's conclusion that Dale was functionally illiterate calls into question the ALJ's conclusion that he could perform his past relevant work as a cashier. This case needs to be remanded to address Dr. Owens' opinion.

"The duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). Rather, the court is charged with reviewing "the record as a whole,

7

including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. Given this record, the court cannot answer that question in the affirmative. Accordingly, it is **RECOMMENDED** that this case be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

                                      Entered: January 26, 2011.

                                      /s/ Michael F. Urbanski
                                      Michael F. Urbanski
                                      United States Magistrate Judge